(26 Misc. Rep. 320.)

## In re VIRGIL.

(Supreme Court, Special Term, New York County. February, 1899.)

CORPORATIONS—COLLUSION OF DIRECTORS—SETTING ASIDE DEFAULT.

Under Laws 1892, c. 687, § 28, providing that if an action is brought against a corporation by procurement of its directors to enforce any claim to which it has a valid defense, and the corporation, by their connivance, makes default, any member may apply to the supreme court on affidavit, stating such facts, for a stay of proceedings, a stockholder showing such facts can have a default opened, and defend in behalf of the company with any attorney of its own selection.

Application by Almon K. Virgil, a stockholder in the Virgil Practice Clavier Company, for an order vacating a judgment against the corporation, and recalling and setting aside executions issued thereunder. Granted.

Edward S. Peck, for the motion.

Arnold W. Sherman, opposed.

SCOTT, J. This is an application by a stockholder of the Virgil Practice Clavier Company for an order vacating a certain judgment obtained against said company, and recalling and setting aside certain executions issued thereunder, and authorizing the petitioner, who is a director of the company, to come in and defend the action in behalf of the company by attorneys selected by himself. The application is made under section 28 of the general corporation law (Laws 1892, c. 687), which reads as follows:

"Stay of Proceedings in Actions Collusively Brought.—If an action is brought against a corporation by the procurement or default of its directors, or any of them, to enforce any claim or obligation declared void in law, or to which the corporation has a valid defense, and such action is in the interest or for the benefit of any director, and the corporation has by its connivance made default in such action, or consented to the validity of such claim or obligation, any member of the corporation may apply to the supreme court, upon affidavit setting forth the facts, for a stay of proceedings in such action, and upon proof of the facts in such further manner, and upon such notice as the court may direct, it may stay such proceedings or set aside and vacate the same, or grant such other relief as may seem proper, and which will not injuriously affect an innocent party, who, without notice of such wrongdoing, and for a valuable consideration, has acquired rights under such proceedings."

The Virgil Practice Clavier Company is organized, under the manufacturing corporations act of 1848, for the manufacture and sale of what are known as "practice claviers," instruments invented and patented by the applicant, who owns 1,805 shares of the capital stock of the company. He is a director of the company, but for nearly all of the year 1898 was absent from this country. The other directors are Antha M. Virgil, the wife of the applicant (who seems to entertain most unwifely feelings towards him), Jessie B. Ginn, Frederick Maniner, and Charles E. Heald. At a meeting of the directors held February 1, 1898, Heald was authorized to negotiate a loan to the company for $6,500 or $7,000 upon the best terms he could obtain, to meet and pay off certain claims against the company, giving as security certain rented instruments belonging to the company. Thereupon, as is alleged, Antha M. Virgil, the president of

the company, advanced $4,000. Ginn and Maniner, both directors, and one Griffiths, advanced $2,850, whereupon the president executed to herself and to Ginn, Maniner, and Griffiths promissory notes of the company for the respective sums said to have been advanced by them. At the same time chattel mortgages were given to secure the payment of these notes, but, owing to the omission to obtain the consent of the holders of the requisite proportion of the stock, these mortgages were invalid, and have since been canceled of record. It is alleged that it was a part of the agreement upon which the money was advanced that the interest thereon should be payable quarterly (the notes being due on February 3, 1899), and that, if default were made in the payment of any installment of interest, the whole sum should at once become due. This provision was not inserted in the notes as originally made, and it does not appear that the directors ever formally authorized notes to be made in this somewhat unusual form. In September, 1898, the president, without any authority or direction from the board of trustees, destroyed the notes originally given, and executed new notes containing the provision as to the whole amount becoming due upon failure to pay any installment of interest. In the meantime, and before the notes had been so altered, two installments of interest had fallen due, and had not been paid, although the evidence is that on both occasions the company had on hand funds sufficient to have paid the interest. Thus it appears that the notes executed in September, in place of the destroyed notes, were actually overdue when they were issued. At about the time that the second notes were executed, the attorney for Mrs. Virgil wrote her a letter containing substantially these words: "As I understand we cannot control two-thirds of the stock, my idea would be to enforce your claim against the corporation; have its property sequestrated, and a receiver appointed. You can sell the franchise and property at public auction, and we could bid it in." The attorney who wrote this letter denies the accuracy of this extract, but admits that he wrote a letter upon the subject, and, since he does not give an accurate version, it is safe to assume that the foregoing is accurate enough. At about the same time, Heald, the general manager, wrote to the same attorney suggesting a plan by which certain stockholders could be "scared" by the necessity of prompt payment of the $7,000, and thus be induced to sell their stock for a "mere nothing." With a view, apparently, of carrying out the scheme foreshadowed in these letters, Mrs. Virgil and her co-director Maniner transferred their notes to George E. Maniner, a brother of Director Maniner, and a very young man, employed in some minor capacity in a school conducted by Mrs. Virgil. He alleges that these transfers were made in consideration of some cash paid and some services rendered, but the details of the consideration are withheld. Maniner thereupon commenced an action upon these notes by a complaint which was verified before Heald, acting as a notary public, and then served upon Heald as manager of the company. The directors promptly passed a resolution that there was no defense to the notes. The petitioner, in his capacity as director, retained an attorney, who appeared for the company, and essayed

to serve an answer. The directors retained other attorneys, and caused them to be substituted as attorneys for the company. These substituted attorneys offered no defense, and judgment was obtained by default, upon which executions have been issued and levies made. The petitioner claims—and the facts go far to bear him out—that all these transactions were part of a scheme to deprive him of his property for the benefit of his wife and the other directors. It remains to be seen whether he is entitled to relief under the statute. This statute is remedial in its character, intended to protect stockholders against just such fraudulent schemes as are alleged to have been concocted and carried out in the present case; and to effect that object it should be given a liberal construction. That the action was brought against the corporation by the procurement of some of the directors, and that the corporation have, by their connivance, made default, and consented to the validity of the claim, cannot be questioned. That such action has been taken in the interest or for the benefit of these directors, I deem to be established. To the particular cause of action upon which the judgment was obtained the corporation may, and probably can, interpose a defense founded upon the unauthorized change in the terms of the notes. As to the innocence of the plaintiff in the judgment, I have grave doubts. The disposition I propose to make of the case will, however, protect his rights, if he has any. The judgments will be opened so far as to permit the petitioner to come in and defend in behalf of the company by an attorney of his own selection, providing he serves an answer to the complaint within 20 days after entry of the order; the judgment, executions and levies to stand meanwhile as security; all proceedings under them, except such as may be necessary for the preservation of the property levied upon, to be stayed until the further order of the court. Settle order on notice.

Ordered accordingly.